IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| NIKA ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-3137 |
| ) | |
| MACOUPIN COUNTY PUBLIC ) | |
| HEALTH DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is Defendant Macoupin County Public Health Department's (the "Department") Motion for Summary Judgment (d/e 26) and Motion to Strike (d/e 39) and Plaintiff Nika Allen's Motion for Partial Summary Judgment (d/e 28). Because genuine disputes of material fact exist as to essential elements of Plaintiff's claim under the Americans with Disabilities Act, the Defendant's Motion for Summary Judgment (d/e 26) and Plaintiff's Motion for Partial Summary Judgment (d/e 28) are each DENIED. Further, because the Court reaches this conclusion without considering the

Page **1** of **17**

affidavit the Department seeks to strike, the Motion to Strike (d/e 39) is DENIED AS MOOT.

## I.  FACTS

The Court draws the following facts from the parties' statements of material facts, taking into account each party's objections thereto.  The Court discusses material factual disputes in its analysis.  Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court.  See Civ. LR 7.1(D)(2)(b)(2).  Any response to an allegedly disputed fact unsupported by evidentiary documentation is deemed admitted.  Id.

Plaintiff Nika Allen began working for the Macoupin County Public Health Department at the Maple Street Clinic (the "Clinic") in early 2017.  Def.'s Mem. (d/e 27) p. 7.  Plaintiff reported directly to Kimberly Stinnett, who was employed by the Department as a lead office assistant with immediate supervisory authority over Plaintiff. Pl.'s Mem. p. 6; Def.'s Mem. p. 7.  Angela Weidner, the director of nursing and chief operating officer for the Department, also had supervisory authority over Plaintiff, though Weidner was not Plaintiff's immediate supervisor.  Pl.'s Mem. (d/e 30) p. 5; Def.'s

Mem. p. 7.  Weidner also had supervisory authority over Christy Blank, clinical director at the Department, and Donna Rassmussen, a physician assistant and assistant director of behavioral health at the Department, though Weidner's supervision of Rassmussen was administrative only.  Pl.'s Mem. p. 5, 6; Def.'s Mem. p. 4, 8.  Kent Tarro was the director of the Department and was the person to whom Weidner reported.  Pl.'s Mem. p. 5; Def.'s Mem. p. 7.

Plaintiff began her employment with the Department and Clinic as a "faxer," but eventually assumed the role of a "Medical Office Assistant."  Pl.'s Mem. p. 7; Def.'s Mem. p. 7.  Plaintiff's responsibilities as Medical Office Assistant included scheduling appointments for patients of the medical clinic and the behavioral health and recovery center.  Pl.'s Mem. p. 7; Def.'s Mem. p. 9.  Plaintiff's performance in her role was mixed.  At Plaintiff's six-month evaluation in September 2017, Stinnett evaluated Plaintiff as being "very proficient" and "do[ing] what [was] asked of her."  J.A. 1599.  Stinnett also noted that Plaintiff "would benefit from avoiding conversations with other certain coworkers and focus on her duties" but that Plaintiff was "capable of being a top performer" and was

"always polite and willing to do extra tasks asked of her." J.A. 1600.

However, Plaintiff was also a part of an "Informal Counselling Session" on February 9, 2018. Def.'s Mem. p. 12; J.A. 0748. She was reportedly cited for not getting along with coworkers and failing to perform some of her job duties. Id. According to Stinnett, the other office assistants also complained that Plaintiff's behavior had changed during her time at the Clinic. Def.'s Mem p. 13. Weidner testified at her deposition that, in February or March of 2018, she thought the other office assistants at the Clinic were "being mean and picking on Plaintiff" which resulted in Plaintiff and the other assistants "constantly fighting." J.A. 1712. The informal counseling session was, itself, the listed discipline for Plaintiff's alleged behavioral issues. J.A. 0748.

Plaintiff also suffered from anxiety and depression while employed at the Clinic. Pl.'s Mem. p. 8; Def.'s Mem. p. 11. Plaintiff received treatment for these mental health conditions from Rassmussen at the Clinic beginning in October 2017. Id. Plaintiff was treated with Xanax, a sedative. Id. Plaintiff discussed her conditions and her treatment with Weidner around the same time

she began treatment, though Plaintiff did not tell Weidner about the specific medication she was taking.  Pl.'s Mem. p. 8; Def.'s Mem. p. 11.

Plaintiff was then hospitalized on March 1, 2018.  Pl.'s Mem. p. 8; Def.'s Mem. p. 11.  Hospital records from Alton Memorial Hospital showed that, after a 9-1-1 call was made to Alton Hospital EMS, Plaintiff was found on the floor of her home and that her family reported Plaintiff experiencing seizures.  J.A. 0200.  Plaintiff was eventually transferred to Passavant Hospital in Jacksonville, Illinois, where she remained hospitalized for three days.  Pl.'s Mem. p. 10; Def.'s Mem. p. 14.  Toxicology reports from Passavant showed Plaintiff's blood tested positive for Xanax, alcohol, and cocaine.  J.A. 2148.  Plaintiff was also diagnosed with bipolar and borderline personality disorder when admitted to Passavant.  Def. Mem. p. 18.

At some point while Plaintiff was hospitalized, Weidner and Blank spoke about the situation.  Pl.'s Mem. p. 10; Def.'s Mem. p. 15.  Weidner testified in a deposition that Blank told Weidner about Plaintiff's hospitalization.  Id.  Weidner stated that Blank said, "[Allen is] fucking crazy and she's in the hospital."  J.A. 1662.

Plaintiff was then discharged from Passavant on March 5, 2018.  Pl.'s Mem. p. 12.  The same day, Dr. Kamna Handa at Passavant sent a letter to Stinnett stating that Plaintiff had been hospitalized, should be excused from work, and would be "able to return to work on 03/09/18 with no restrictions."  Pl.'s Mem. p. 12.  Plaintiff did so on March 12, 2018.  Pl.'s Mem. p. 13; Def.'s Mem. p. 19.  The same day, Plaintiff had an appointment with Dr. Yae Rim Lee, a psychiatrist at the Clinic, for evaluation of Plaintiff's mental health matters after Rassmussen referred Plaintiff to Dr. Lee.  Pl.'s Mem. p. 8–9; Def.'s Mem. p. 19.  Dr. Lee noted that Plaintiff stated she was referred because "I [Plaintiff] overdosed and I [Plaintiff] almost died."  J.A. 0441.  Dr. Lee also noted Plaintiff saying that she had been using illegal substances on a weekly basis for about a year.  J.A. 0441–0442.  Plaintiff immediately returned to work following her appointment with Dr. Lee.  Pl.'s Mem. p. 9.

The next day on March 13, 2018, Plaintiff was called into a meeting with Stinnett, Weidner, and Blank.  Pl.'s Mem. p. 14; Def.'s Mem. p. 20; Def.'s Resp (d/e 33) p. 24.  According to Plaintiff, Weidner stated that both she and Blank believed Plaintiff was mentally unstable and should take a leave of absence.  Pl.'s Mem. p.

14–15; J.A. 0137–0138.  Both Weidner and Blank deny commenting on Plaintiff's mental health.  Def.'s Resp. p. 25–26.  The parties dispute most of what transpired at the meeting, including what was said, who said it, and whether Plaintiff was forced to take involuntary FMLA leave or whether the leave was "offered" to Plaintiff.  Pl.'s Mem. p. 14–16; Def.'s Mem. p. 20–23; Def.'s Resp. p. 25–28; Pl.'s Resp. (d/e 34) p. 13–19.  Undisputed, though, is the fact that Plaintiff was placed on leave under the Family and Medical Leave Act effective March 13, 2018 despite Plaintiff not believing she needed to take any leave.  Def.'s Mem. p. 23; Pl.'s Resp. p. 19.

Also undisputed is an email Blank sent to Tarro, Weidner, and Stinnett on March 13, 2018 recommending Plaintiff's employment be immediately terminated.  Pl.'s mem p. 13; Def.'s Resp. p. 22.  Blank's recommendation was, in part, due to her concern that the Clinic "[had] someone first line with patients" who was "very unstable but yet" the Clinic was "asking her to represent" the Clinic.  J.A. 2137.  Blank's concern stemmed from "the amount of patients [the Clinic] deal[t] with . . . on a daily basis" who were "not stable."  Id.  While Plaintiff's employment was not terminated in accordance with Blank's recommendation, Plaintiff's employment

with the Department eventually ended when Plaintiff contacted Tarro sometime mid-June 2018 to say that Plaintiff quit.  Def.'s Mem. p. 31; Pl.'s Resp. p. 34.

Plaintiff then filed suit against Defendant the Macoupin County Public Health Department on June 4, 2020 alleging the Department's employees' actions in placing Plaintiff on leave violated the Americans with Disabilities Act, 42 U.S.C. § 12112(a) (hereinafter "ADA").  See Compl. (d/e 1).  Both Plaintiff and the Department have now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARD

Summary judgment is proper under Rule 56 if there is no genuine dispute of material fact and the movant shows she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is not warranted if there are factual disputes as to an essential element of the case which would determine whether a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir. 2012). In short, "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). On that evidence, the Court must determine whether a genuine dispute of material facts exists.

A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008). These standards for summary judgment remain when considering cross-motions for summary judgment: the Court must "construe all inferences in favor of the

party against whom the motion under consideration is made." Oneida Nation v. Vill. of Hobart, Wis., 371 F. Supp. 3d 500, 508 (E.D. Wis. 2019) (quoting Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 561–62 (7th Cir. 2002)).

### III.   ANALYSIS

Plaintiff alleges that the Department's actions in placing Plaintiff on FMLA leave amount to a violation of the Americans with Disabilities Act's prohibition on workplace discrimination.  See 42 U.S.C. § 12112(a).  An employer violates the ADA when it "discriminate[s] against a qualified individual on the basis of disability."  Id.  To succeed on a claim that an employer violated the ADA, a qualified individual must establish that (1) she was disabled, (2) she was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) her disability was the basis for the adverse employment action.  Richardson v. Chicago Transit Auth., 926 F.3d 881, 886 (7th Cir. 2019).  The parties do not dispute that Plaintiff was otherwise able to perform the essential functions of her job, instead focusing their arguments on the first and third prongs of Plaintiff's

claim as well as whether Plaintiff was a "qualified individual" under the ADA.

The Department argues that Plaintiff cannot succeed on her claim under the ADA because Plaintiff cannot show she was a "qualified individual" under the statute. 42 U.S.C. § 12112(a). A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position" the individual holds. Id. at § 12111(8). The ADA's implementing regulations further state that an individual is "qualified" if "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position" she holds and "can perform the essential functions of such position" with or without reasonable accommodation. 29 C.F.R. § 1630.2(m). The regulations explicitly exempt from the definition of "qualified individual" individuals "currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 29 C.F.R. § 1630.3(a).

Disputes of fact on this issue preclude summary judgment. While the Department is correct that Plaintiff would not be a "qualified individual" if the Department acted on the basis of

Plaintiff's admitted use of illegal drugs, see Pl.'s Resp. p. 37, the extent to which the Department relied on Plaintiff's drug use is disputed. First, the Department has not presented any evidence to show that Plaintiff's superiors knew about Plaintiff's drug use before placing her on leave. The Department has only shown that Blank and Weidner knew Plaintiff had been hospitalized because, in Blank's words, she was "fucking crazy." That does not put beyond dispute either Blank's, Weidner's, or Stinnett's knowledge of Plaintiff's use of drugs. If anything, as explained *supra*, that statement raises an inference from which, when viewed in the light most favorable to Plaintiff, a reasonable jury could conclude that the Department regarded Plaintiff as being disabled.

Moreover, even if Plaintiff's supervisors did know about the drug use, the Department has not shown that it acted "on the basis" of such use. 29 C.F.R. § 1630.3(a). Issues of fact exist as to the purported bases for placing Plaintiff on leave, such as what Weidner, Stinnett, and Blank knew about Plaintiff's use of illegal drugs, when they knew it, and to what extent they relied on such information when placing Plaintiff on leave. Accordingly, Plaintiff's ability to show that the Department did not know Plaintiff was

using drugs at the time she was placed on leave, and therefore a "qualified individual" within the meaning of the ADA, hinges on a question of fact for a reasonable jury to decide. The Department's request for summary judgment on the basis of Plaintiff's use of illegal drugs must, therefore, be denied.

Further, questions of fact exist as to whether Plaintiff can show a disability under the ADA. To prove a disability under the ADA, a plaintiff must show "(A) a physical or mental impairment that substantially limit[ed] one or more major life activities . . . (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1). Plaintiff here relies on the "regarded as" prong. An individual meets the definition of having a disability under that prong "if the individual establishes that he or she has been subjected to an action . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. at § 12102(3)(A). Under the ADA's implementing regulations, the term "mental impairment" means "[a]ny mental or psychological disorder, such as an intellectual disability (formerly termed 'mental

retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilit[y]." 29 C.F.R. § 1630.2(h)(2).

    Plaintiff has presented evidence to support her claim that she was "regarded as" having an impairment.  Plaintiff has presented evidence showing she suffered from depression and anxiety, was diagnosed with bipolar and borderline personality disorder, and received treatment regularly from Rassmussen at the Clinic for her depression and anxiety.  Plaintiff has also shown that her supervisors knew about these maladies and presented evidence that Blank referred to Plaintiff as "unstable" and "fucking crazy."  Such diagnoses clearly fit the definition of a "mental impairment."  Blank's descriptions of Plaintiff also raise a question as to whether the Department regarded Plaintiff as having a mental impairment.  However, when the facts are viewed in the light most favorable to each party as they must be on cross-motions for summary judgment, the Court determines that the issue of whether Plaintiff was "subjected to an action," in this case, placing Plaintiff on FMLA leave, "because of" the perceived impairment is a question of fact for a jury to decide.

Lastly, the Department challenges Plaintiff's ability to prove she suffered an adverse employment action on the basis of her disability. Richardson, 926 F.3d at 886. The Department argues Plaintiff cannot establish this final element because Plaintiff was not subjected to discipline on March 12 or 13, 2018 and because, in the Department's view, the FMLA leave on which Plaintiff was placed was not a disciplinary measure. However, under the ADA's implementing regulations, "[p]rohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment." 29 C.F.R. § 1630.2(l)(1) (emphasis added). The prohibition against being placed on involuntary leave is not limited to when such leave is disciplinary. The regulation simply states that placing an employee who is regarded as disabled on involuntary leave because of the disability is prohibited. Placing Plaintiff on involuntary FMLA leave on March 13, 2018 because of a disability would plainly fall into this category.

However, questions of fact remain regarding causation. Plaintiff's argument only goes so far as to point out the above-cited

regulation. Pl.'s Mem. p. 25. The Department, on the other hand, disputes that Plaintiff was placed on leave solely because of a perceived disability. The Department's argument is bolstered by evidence that Plaintiff had used illegal drugs. But as already explained, questions abound regarding the extent to which Plaintiff's employment superiors at the Department were aware of her drug use and whether they acted on that basis. Such questions and the weighing of evidence are question for the jury. See Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") Accordingly, summary judgment is precluded on the causal element Plaintiff's ADA claim.

## IV.   CONCLUSION

Each party has presented evidence from which a reasonable jury could find in its favor regarding the essential elements of Plaintiff's claim under the ADA. As such, both Motions for Summary Judgment (d/e 26 & 28) must be denied. Furthermore, because the Court does not consider the Affidavit of Nika Allen in

this ruling, the Department's Motion to Strike the same (d/e 39) is denied as moot.

**IT IS SO ORDERED.**
**ENTERED: September 22, 2022.**
**FOR THE COURT**

                                             */s/ Sue E. Myerscough*
                                             **SUE E. MYERSCOUGH**
                                             **UNITED STATES DISTRICT JUDGE**